**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

Sandra Wood, individually and as
Administratrix of the Estate of Michael
Wood, deceased, and on behalf of all others
similarly situated,

               Plaintiff,

v.

American Bankers Life Assurance Company
of F.L.O.R.I.D.A.,

               Defendant.

C.A. No. _5:21-cv-00281_____
(Removed from Circuit Court of Raleigh
County, C.A. No. CC-41-2021-C-93)

**NOTICE OF REMOVAL**

Defendant, American Bankers Life Assurance Company of Florida ("ABLAC"),[1] through

its undersigned counsel, hereby removes the above-captioned action from the Circuit Court of

Raleigh County, West Virginia, to the United States District Court for the Southern District of

West Virginia pursuant to the Class Action Fairness Act of 2005 ("CAFA") and traditional

diversity jurisdiction under 28 U.S.C. 1332(a).  *See* 28 U.S.C. §§ 1332, 1441, 1446 and 1453.

ABLAC states as follows in support of removal:

**BACKGROUND AND PROCEDURAL HISTORY**

**Plaintiff's Initial Federal Complaint**

1.      On March 22, 2021, Plaintiff Sandra Wood, individually and as Administrator of

the Estate of Michael Wood ("Plaintiff"), initially filed a putative class action against ABLAC in

the United States District Court for the Southern District of West Virginia, Beckley Division (the

---

[1] The State Court and Federal Complaints erroneously refer to ABLAC as "American Bankers Life
Assurance Company of F.L.O.R.I.D.A."

"Federal Complaint").  The case was styled as *Wood v. American Bankers Life Assurance Co. of F.L.O.R.I.D.A.*, No. 5:21-cv-00180 and assigned to the Honorable Judge Frank W. Volk (the "Federal Action").  A copy of the Federal Complaint is attached hereto as Exhibit 1.

2.      Plaintiff's Federal Complaint admits all of the facts needed to establish jurisdiction under CAFA and traditional diversity jurisdiction.  *See* 28 U.S.C. § 1332(a), (d); Fed. Action, Dkt. No. 1, Fed. Compl. ¶ 5.

3.      The Federal Complaint alleged that ABLAC sold Plaintiff and putative class members life, disability and / or unemployment insurance policies marketed to pay off residential real estate loans in the event of a covered claim.  *See id.* ¶ 7, p. 3.  Plaintiff further alleged that ABLAC "continue[d] to collect" certain "automatic premium withdrawals" from Michael Wood and the putative class members after "bank customers paid off their loans."  *Id.* ¶ 12, p. 4.

4.       The Federal Complaint alleged the following claims against ABLAC:  1) negligence; 2) breach of contract; 3) common law bad faith; 4) purported violations of the West Virginia Unfair Trade Practices Act;  5) unjust enrichment / disgorgement; and 6) purported violations of the West Virginia Consumer Credit and Protection Act.  *See id.* ¶¶ 22-70, pp. 10-19.

5.      In the Federal Complaint, Plaintiff sought to represent the following putative class pursuant to Federal Rule of Civil Procedure 23(b)(3):

> All Persons who were holders of a West Virginia certificate of insurance through Defendant, American Bankers Life Assurance Company of Florida, between March 22, 2011 and the present ("Class Period"), whose bank loan was paid off, but automatic insurance premium withdrawals continued through a banking institution.

*Id.* ¶ 19, p. 6.

6.      Importantly, the Federal Complaint ***explicitly admitted*** that "[t]his Court has jurisdiction pursuant to the Class Action Fairness Act (C.A.F.A.), 28 U.S.C. § 1332(d)(2) because

the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs and the members of the Class are residents of states different from one or more defendants." *Id.* ¶ 5, p .3.

7.      The Federal Complaint further ***admitted*** the existence of traditional diversity jurisdiction and stated that "[t]his Court also has jurisdiction pursuant to 28 U.S.C § 1332(a) as numerous members of the Class are citizens of states different from one or more Defendants." *Id.* ¶ 6, p. 3.

8.      Plaintiff's Federal Complaint sought recovery from ABLAC for alleged "compensatory damages, treble damages, punitive damages, which said sums are in excess of $5,000,000, attorneys' fees and costs, pre-judgment interest, post-judgment interest as provided by law, suitable equitable relief, restitution, disgorgement . . . of all profits, and for such other relief as may be proper under law." *Id.* at p. 19.

9.      On March 31, 2021, Plaintiff filed a Notice of Dismissal and voluntarily dismissed her Federal Complaint and the Federal Action without prejudice. *See* Fed. Action, Dkt. No. 4. Plaintiff never effectuated service of the Federal Complaint on ABLAC.

## Plaintiff's State Court Complaint

10.      On March 31, 2021, Plaintiff refiled a virtually identical putative class action Complaint (the "State Court Complaint") against ABLAC in the Circuit Court of Raleigh County, West Virginia.   The action is styled as *Wood v. American Bankers Life Assurance Co. of F.L.O.R.I.D.A.*, No. CC-41-2021-C-93 (the "State Court Action").   Pursuant to 28 U.S.C. § 1446(a), a copy of the State Court Complaint and Summons are attached hereto as Exhibit 2.

11.      Plaintiff's State Court Complaint alleges that ABLAC sold Plaintiff and putative class members life, disability and / or unemployment insurance policies marketed to pay off residential real estate loans in the event of a covered claim. *See* State Court Compl. ¶ 5, p. 3.

3

Plaintiff further alleges that ABLAC "continue[d] to collect" certain "automatic premium withdrawals" from Michael Wood and the putative class members after "bank customers paid off their loans." *Id.* ¶ 12, p. 3.

12.    The State Court Complaint alleges the following claims against ABLAC: 1) negligence; 2) breach of contract; 3) common law bad faith; 4) purported violations of the West Virginia Unfair Trade Practices Act; 5) unjust enrichment / disgorgement; and 6) purported violations of the West Virginia Consumer Credit and Protection Act. *See id.* ¶¶ 22-71, pp. 9-19.

13.    In the State Court Complaint, Plaintiff seeks to represent the following putative class pursuant to West Virginia Rule of Civil Procedure 23(b)(3):

> All persons who were holders of a West Virginia certificate of insurance through Defendant, American Bankers Life Assurance Company of Florida, between March 31, 2011 and the present ("Class Period"), whose bank loan was paid off, but automatic insurance premium withdrawals continued through a banking institution.

*Id.* ¶ 19, pp. 5-6.

14.    Plaintiff's State Court Complaint omits the allegations explicitly conceding that this Court has CAFA jurisdiction and traditional diversity jurisdiction, which Plaintiff included in its initial Federal Complaint. *See, e.g., id.* ¶¶ 3-4.  The State Court Complaint, however, neither disavows nor contradicts the Federal Complaint's allegations.

15.    Plaintiff's State Court Complaint seeks recovery from ABLAC for alleged "compensatory damages, treble damages, punitive damages, attorneys' fees and costs, pre-judgment interest, post-judgment interest as provided by law, suitable equitable relief, restitution, disgorgement . . . of all profits, and for such other relief as may be proper under law." *Id.* at p. 19.

## THIS NOTICE OF REMOVAL IS TIMELY

16.    Plaintiff served a copy of the Summons and the State Court Complaint on ABLAC via the West Virginia Secretary of State on April 5, 2021.  *See* Ex. 2.

17.    Other than the filing and service of the Summons and State Court Complaint, no other proceedings have occurred in State Court Action, and Plaintiff has not served any other pleadings, process or orders.  Pursuant to 28 U.S.C. § 1446(a) and Local Rule of Procedure 3.4(b), ABLAC is attaching a copy of the state court docket to this Notice as Exhibit 3.

18.    In accordance with 28 U.S.C. § 1446(d), ABLAC is promptly providing written notice to Plaintiff, through her counsel, that this case has been removed to this Court pursuant to this Notice of Removal.  ABLAC is also filing this Notice of Removal and a copy of the same with the Clerk of the Circuit Court of Raleigh County, West Virginia.  ABLAC's state court Notice of Filing is attached as Exhibit 4.

19.    This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), because removal has occurred within 30 days of service of the Summons and Complaint upon Defendant.

## JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

20.    This Court has original jurisdiction over this case pursuant CAFA.  *See* 28 U.S.C. § 1332(d).  CAFA provides that a federal district court shall have original jurisdiction over any civil class action that meets the following criteria: (1) the plaintiff's proposed class contains 100 or more members; (2) any member of a class of plaintiffs is a citizen of a State different from any defendant; and (3) the amount in controversy exceeds $5 million in the aggregate.  *See* 28 U.S.C. § 1332(d)(2), (5); *see, e.g.*, *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 194 (4th Cir. 2017) (analyzing the CAFA factors and reversing a district court's remand order); *Cox v. Air Methods Corp.*, No. 17-cv-04610, 2018 WL 2437056, at *2 (S.D. W. Va. May 5, 2018) (same).

21.    "A defendant invoking CAFA to remove a class action from state court must file a notice of removal in the proper district court 'containing *a short and plain statement of the grounds for removal*.'"  *Scott*, 865 F.3d at 194 (quoting 28 U.S.C. § 1446(a)) (emphasis added).

Furthermore, "[b]ecause 'no antiremoval presumption attends cases invoking CAFA . . . a defendant's notice of removal need include only a plausible allegation'" that the case meets the CAFA criteria for removal. *Id.* (quoting *Dart Cherokee Basin Op. Co. v. Owens*, 574 U.S. 81, 89 (2014)).

22.    "The Supreme Court was clear in *Dart Cherokee*: the liberal rules of pleading apply to removal allegations." *Id.* at 195 (citing *Dart Cherokee*, 574 U.S. at 87); *Lanham v. Nationstar Mortgage, LLC*, 169 F.Supp.3d 659, 664 n.6 (S.D. W. Va. 2016) (holding that the court must apply the *Dart Cherokee* analysis when reviewing **all** of the CAFA requirements articulated in a Notice of Removal); *see also Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008) (reversing a district court's remand order and holding that a removing party's notice of removal need not "meet a higher pleading standard than the one imposed on a plaintiff in drafting an initial complaint").

23.    Moreover, courts routinely consider information such as a plaintiff's prior pleadings in an action and demand letters when evaluating if a case meets the statutory requirements for removal. *See, e.g.*, *Scaralto v. Ferrell*, 826 F.Supp.2d 960, 967 (S.D. W. Va. 2011) ("A settlement demand . . . is very like an *ad damnum* clause over that amount and should be treated similarly. Both are statements by plaintiffs as to the amount claimed and are therefore the best measure of the amount in controversy." (citing *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006)); *Cunningham v. Millers Cas. Ins. Co.*, No. 00-cv-1792, 2001 WL 37125218, at *3 (D.N.M. Mar. 19, 2001) (holding that a court "may certainly look to the plaintiff's . . . earlier pleading" to assess if a case meets the jurisdictional requirements for removal (citing Charles Alan Wright, Law of Federal Court, § 33 at 197 (5th Ed. 1994)).

24. This action satisfies all of CAFA's criteria for federal jurisdiction and this Court has original subject matter jurisdiction.

### The Putative Class Consists of More than 100 Members

25. CAFA defines the term "class action" as "any civil action filed under [R]ule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

26. Plaintiff filed this case as a West Virginia state court class action pursuant to Rule 23 of the West Virginia Rules of Civil Procedure, which is similar to Rule 23 of the Federal Rules of Civil Procedure. State Court Compl. at ¶ 9, pp. 5-6. Consequently, this case falls within CAFA's definition of a "class action."

27. Plaintiff's Federal Complaint stated that "[t]his Court has jurisdiction pursuant to [CAFA]" and thereby conceded that the members of the putative class at issue in the Federal Complaint exceeded 100 members. *See* Fed. Action, Fed. Compl., Dkt. No. 1 ¶¶ 5, 19, pp. 3, 6. In the Federal Complaint, Plaintiff sought to represent herself and "all persons who were holders of a West Virginia certificate of insurance through [ABLAC], between March 22, 2011 and the present . . . whose bank loan was paid off, but automatic premium withdrawals continued through a banking institution." *Id.* ¶ 19, p. 6; *see, e.g.*, *Cunningham*, 2001 WL 37125218, at *3 (analyzing a plaintiff's previous federal complaint to assess if the case met the jurisdictional requirements for removal).

28. The State Court Complaint contains a virtually identical putative class definition and thus concedes that the putative class exceeds 100 members. *See* State Court Compl. ¶ 19, pp. 5-6. Specifically, in the State Court Complaint, Plaintiff seeks to represent herself and "all persons

who were holders of a West Virginia certificate of insurance through [ABLAC] between March 31, 2011 and the present . . . whose bank loan was paid off, but automatic premium withdrawals continued through a banking institution." *Id.* The only minor difference in the two putative class definitions is that the Federal Complaint identifies a class period beginning on March 22, 2011 and the State Court Complaint identifies a class period beginning on March 31, 2011, which is a trivial difference of nine days. *Compare id.*, *with* Fed. Compl. ¶ 19, p. 6.

29.    Moreover, although Plaintiff's State Court Complaint does not identify a precise number of putative class members, it alleges that the class is so "numerous" that joinder of all members "would be unreasonable and impracticable." State Court Compl. ¶ 20(a), p. 6.

30.    Therefore, this action meets the requirements of 28 U.S.C. § 1332(d) because it is a putative class action consisting of 100 or more members.

## This Case Satisfies CAFA's Minimal Diversity Requirement

31.    CAFA's minimal diversity of citizenship requirement is set forth in 28 U.S.C. § 1332(d)(2) and provides that a federal court shall have jurisdiction if any member of a putative class of plaintiffs is a citizen of a State different from any defendant.

32.    Plaintiff's Federal Complaint explicitly admitted that this case satisfies CAFA's minimal diversity requirement. *See* Fed. Compl. ¶ 5, p. 3. Specifically, the Federal Complaint alleged that "[t]his Court has jurisdiction pursuant to [CAFA] because . . . members of the Class are residents of states different from one or more defendants." *Id.*; *Cunningham*, 2001 WL 37125218, at *3 (analyzing a plaintiff's previous federal complaint to assess if the case met the jurisdictional requirements for removal).

33.    Plaintiff's State Court Complaint alleges that Plaintiff Sandra Wood, as "Administratrix of the Estate of Michael Wood" and as "a third-party beneficiary of Michael

Wood's insurance policy with [ABLAC]," "is now and has been at all times alleged herein a resident of Raleigh County, West Virginia." State Court Compl. ¶ 3, p. 2. Moreover, Plaintiff alleges that Michael Wood, at the time he supposedly entered into "a policy of life insurance" with ABLAC and at the purported time of his death on February 8, 2018, "was a resident of 188 Allenwood Lane, Shady Springs, Raleigh County, West Virginia." *Id.* Thus, Plaintiff Sandra Wood is a citizen of West Virginia for the purposes of CAFA's minimal diversity analysis. *See* 28 U.S.C. § 1332(c)(2) ("[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same state as the decedent.").

34.    Plaintiff's own allegations as well as public records from the West Virginia Secretary of State and the West Virginia Offices of the Insurance Commissioner establish that ABLAC is a Florida corporation with its principal place of business located in Miami, Florida. *See* State Court Compl. ¶ 4 (alleging that ABLAC is a Florida corporation)[2]; Exs. 5 & 6, (public records from the West Virginia Secretary of State and the West Virginia Officers of the Insurance Commissioner establishing that ABLAC is a Florida corporation with a principal place of business in Miami, Florida). ABLAC is a citizen of Florida for the purposes of this diversity analysis. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.").

35.    Accordingly, minimal diversity exists because at least one putative class member (Plaintiff) and the only Defendant (ABLAC) are diverse. *See* 28 U.S.C. § 1332(d)(2)(A).

---

[2] Plaintiff's Federal Complaint explicitly admitted that ABLAC is "a Florida corporation with its principal office located in Miami, Florida." *See* Fed. Compl. ¶ 3, p. 2. However, Plaintiff omitted the allegation regarding ABLAC's principal office in Miami, Florida from the State Court Complaint. *Compare id.*, *with* State Court Compl. ¶ 4, p. 2. Nonetheless, the State Court Complaint neither disavows nor contradicts this prior allegation.

## This Case Satisfies CAFA's Amount-In-Controversy Requirement

36.     CAFA provides that the claims of the putative class members "shall be aggregated" to determine whether the jurisdictional minimum of $5 million has been met.  28 U.S.C. § 1332(d)(2), (6); *see also Moffitt v. Residential Funding Co., LLC*, 604 F.3d 156, 158 (4th Cir. 2010).

37.     Plaintiff's Federal Complaint ***explicitly conceded*** that the "amount in controversy exceeds $5,000,000.00 exclusive of interest and costs" and acknowledged that the "compensatory damages, treble damages [and] punitive damages . . . are in excess of $5,000,000.00."  Fed. Compl. ¶ 5, p. 3, 19.  *Cunningham*, 2001 WL 37125218, at *3 (holding that a court "may certainly look to the plaintiff's statement of the amount in controversy in an earlier pleading" because "[g]reat weight should be given to the plaintiff's own assessment of the value of his case.").

38.     Although Plaintiff omitted a specific monetary demand from her State Court Complaint, the Federal Complaint and the State Court Complaint contain virtually identical factual allegations and assert the exact same claims for relief against ABLAC.  *Compare* Fed. Compl. ¶¶ 22-70, pp. 10-19, *with* State Court Compl. ¶¶ 22-71, pp. 9-19.  Moreover, the proposed class definitions that Plaintiff included in the Federal Complaint and the State Court Complaint are virtually identical except for a trivial nine-day difference in the class period.  *Compare* Fed. Compl. ¶ 19, p. 6, *with* State Court Compl. ¶ 19, pp. 5-6.  Thus, Plaintiff has conceded that the amount allegedly in controversy in the State Court Complaint exceeds CAFA's jurisdictional minimum of $5 million.

39.     Next, Plaintiff's counsel submitted a settlement demand letter and a "notice of claim" to ABLAC on July 2, 2020, which reveals that the amount in controversy exceeds the jurisdictional threshold.  July 2, 2020 Letter at p. 1-2 (a copy of the July 2, 2020 letter is attached

hereto as Ex. 7.).    Specifically, Plaintiff's July 2, 2020 letter demanded that ABLAC "immediately" pay to Plaintiff the "face amount of the policy," which Plaintiff identified as $50,000.000, as well as "reimbursement" for allegedly excess "premium payments" that ABLAC supposedly collected.  *Id.* at p. 1-2.

40.    Plaintiff's State Court Complaint incorporates the July 2, 2020 letter by reference in Plaintiff's breach of contract claim and reiterates Plaintiff's demand for the $50,000.00 "face amount of the policy."  State Court Compl. ¶ 33, at p. 11.  The State Court Complaint also alleges that ABLAC purportedly collected excess "premium withdrawals" from the putative class members after their "bank loan[s]" were supposedly "paid off."  *Id.* ¶ 19, at p. 6.  Moreover, Plaintiff further alleges that ABLAC also purportedly "breached its contracts of insurance" with "members of the Putative Class" by "failing to pay the face amount of the policies."  *Id.* ¶ 34, at p. 11.  Additionally, Plaintiff alleges that her "claims" are "typical of the claims of the members of the Class" and that ABLAC "acted in a manner that affected all [putative class members] similarly."  *Id.* ¶¶ 20 (b), (c), at pp. 7.  As a result of these allegations, Plaintiff alleges that the putative class members are each seeking to recover at least $50,000.00 for the "face value" of their supposed policies as well as a recovery for "excess premium withdrawals."

41.    As discussed in Paragraphs 25 through 30 above, Plaintiff has admitted that the putative class includes at least 100 members.

42.    Thus, based upon the July 2, 2020 demand letter, as incorporated into Plaintiff's State Court Complaint, and the other allegations presented in the State Court Complaint, Plaintiff alleges that at least 100 putative class members have purported claims against ABLAC for at least $50,000.00 *plus* the amount of "excess premiums" ABLAC supposedly collected from the putative class members.  Consequently, the demand letter and related breach of contract allegations

establish that the amount-in-controversy exceeds the jurisdictional minimum of $5 million (a minimum of 100 class members multiplied by the alleged amount of at least $50,0000 per class member plus additional "excess premium" costs for each putative class member).

43.    Other claims asserted in the State Court Complaint also explicitly reveal that the amount in controversy greatly exceeds the $5 million jurisdictional minimum.  For instance, Plaintiff alleges a claim for supposed violations of the West Virginia Consumer Credit and Protection Act (the "WVCCPA") and seeks damages under the statute.  *See id.* ¶¶ 61-71, at pp. 17-18; W. Va. Code §46A-1-101, *et seq.*  The WVCCPA states that a consumer may recover: (a) "[a]ctual damages"; and (b) a statutory penalty of $1,000 for each violation of the statute up to a maximum of "the greater of $175,000 or the total alleged outstanding indebtedness." W. Va. Code §46A-5-101(1).  In a class action, each class member may seek a recovery of up to these limits. *Id.*  Courts have discretion to increase the $1,000 statutory penalty for each violation of the WVCCPA to account for inflation calculated from September 1, 2015 to the time of the damages award based upon the U.S. Bureau of Labor Statistics' consumer price index inflation calculator.[3] *See* W. Va. Code § 46A-5-106.

44.    Here, such an adjustment for inflation would result in a per-violation statutory penalty of $1,113.19.  *Countryman v. NCO Fin. Sys., Inc.*, No. 09-cv-00288, 2009 WL 1506720, at *2 (S.D. W. Va. May 27, 2009) (adjusting a WVCCPA statutory penalty for inflation and holding that defendant met the amount in controversy for removal purposes).

45.    The statute of limitations for a claim arising under the WVCPPA is four years.  W. Va. Code § 46A-5-101.

---

[3] *See* United States Department of Labor, Bureau of Labor Statistics, CPI Inflation Calculator: http://www.bls.gov/data/inflation_calculator.htm.

46.    "For the purposes of calculating the amount in controversy, the Court uses the maximum total statutory penalties that may be imposed on [d]efendants under the WVCCPA." *Countryman*, 2009 WL 1506720, at *2; *see Kelley v. Sallie Mae, Inc.*, No. 14-cv-138, 2015 WL 1650080, at *5 (N.D. W. Va. 2015) ("When there is a maximum penalty by statute, it is appropriate to measure the amount in controversy by the maximum and not by what the plaintiff is likely to win. . . . This method of measuring the amount in controversy is also the common practice in cases under the WVCCPA which have been removed to federal court." (citing *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005); *Knott v. HSBC Card Servs., Inc.*, No. 10-cv-82, 2010 WL 35522105, at *4 (N.D. W. Va. Sept. 8, 2010)).

47.    Here, Plaintiff alleges that Mr. Wood paid off his underlying loan on or about May 6, 2009 and claims that ABLAC violated the WVCCPA when it supposedly continued to make "automatic premium withdrawals" following the loan payoff date.  *See* State Court Compl. ¶¶ 15 61-71, at pp. 4, 17-19.  Thus, if Plaintiff's claim is timely (which ABLAC does not concede), Plaintiff asserts an individual claim for $1,113.19.00 for each alleged "automatic premium withdrawal" for a four year period and a total statutory penalty demand of $53,433.12 ($1,113.19.00 x 12 x 4).[4]

48.    As discussed above, Plaintiff alleges that her "claims" are "typical of the claims of the members of the Class," that ABLAC "acted in a manner that affected all [putative class members] similarly," and that the class consists of at least 100 putative members.  *Id.* ¶¶ 20 (b), (c), at pp. 7.  Consequently, the amount-in-controversy for the WVCCPA statutory damages claim

---

[4] This assumes that the $53,433.12 statutory penalty is greater than the total alleged outstanding indebtedness.  *See* W. Va. Code §46A-5-101(1).  However, if the total alleged outstanding indebtedness is greater, this sum may increase significantly.

asserted in Plaintiff's State Court Complaint is at least **$5,343,312.00** ($53,433.12 x 100).  The sum is well in excess of the jurisdictional minimum of $5 million.

49.    The WVCCPA also provides that an insurer "who fails to refund any unused insurance premium or provide the proper notification of payoff" can be held liable for treble damages "up to three times the amount of the unused premium."  W. Va. Code § 46A-3-109(8).

50.    Plaintiff seeks a recovery of treble damages for purported violations of the WVCCPA.  *See* Sate Court Compl. ¶ 71, at p. 19.  Consequently, the trebling of the alleged statutory damages will further increase the amount in controversy for the purposes of this removal analysis.  *See Atkins v. AT&T Mobility Services, LLC*, No. 18-cv-00599, 2019 WL 5190971, at *8 n.8 (S.D. W. Va. Oct. 15, 2019) (considering plaintiffs' claim for treble damages for the purposes of an amount in controversy analysis and denying a motion to remand); *see also Wall v. Fruehauf Trailer Servs., Inc.*, 123 F. App'x 572, 577 (4th Cir. 2005) (considering treble damages as a part of the amount in controversy and holding that defendant satisfied the amount in controversy requirement for removal); *Mullins v. Harry's Mobile Homes, Inc.*, 861 F.Supp. 22, 24 (S.D. W. Va. 1994) (holding that "punitive damages are a part of the amount in controversy for jurisdictional amount purposes" and denying a motion to remand).

51.    Plaintiff alleges the monthly premium payments were $17.50 per month ($210 / year) during the relevant time period.  State Court Compl. ¶ 8, p. 3.  If Plaintiff's claim is timely (which ABLAC does not concede), Plaintiff asserts a potential claim for alleged premium overpayment in the amount of **$840** ($210 x 4) during the 4 year limitations period that applies to the WVCCPA claim.  W. Va. Code § 46A-5-101.  As noted, Plaintiff alleges that her "claims" are "typical of the claims of the members of the Class" and that ABLAC "acted in a manner that affected all [putative class members] similarly."  State Court Compl. ¶¶ 20 (b), (c), at pp. 7.  Thus,

14

Plaintiff asserts a claim for premium payment in the amount of *$84,000* ($840 x 100) on behalf of at least 100 putative class members.  If the Court were to treble this amount, the total amount of the treble damages awarded to the putative class would be *$252,000* ($84,000 x 3).  Treble damages increases the total amount in controversy for Plaintiff's WVCCPA statutory damages claim to *$5,595,312.00* ($5,343,312.00 + $252,000).

52.    Additionally, federal courts in West Virginia consider attorneys' fees when calculating the amount in controversy for removal jurisdiction if a West Virginia statute, such as the WVCCPA, expressly provides for a recovery of such fees.  *See, e.g.*, *Jones v. Capital One Bank (USA), N.A.*, No. 09-cv-00994, 2009 WL 3335350, at *3 (S.D. W. Va. 2009) (considering attorneys' fees under the WVCCPA as a part of the amount in controversy and denying a motion for remand); *Countryman*, 2009 WL 1506720, at *2 (same).  Federal courts assume that a plaintiff may be able to recover up to one-third of its total recovery in attorneys' fees when calculating the amount in controversy.  *See, e.g.*, *Holstein v. Sears Holdings Corp.*, No. 14-cv-21166, 2014 WL 4467696, at *2 (S.D. W. Va. Sept. 9, 2014) (adding a "one-third attorney's fee" to the amount in controversy for CAFA removal purposes).

53.    Here, the WVCCPA allows for a recovery of attorneys' fees for any "illegal, fraudulent or conscionable conduct."  W. Va. Code § 46A-5-104.  Plaintiff's State Court Complaint explicitly seeks recovery of alleged "attorneys' fees and costs."  *See* State Court Compl. ¶¶ 70 & "Wherefore," at pp. 19.  If the Court were to award attorneys' fees on only the sum at issue in the WVCCPA statutory damages claim, the total amount of fees would be *$1,865,104.00* ($5,595,312.00 x 1/3) if the Court considers the treble damages award.  Even if the Court were to award attorneys' fees on the statutory penalty alone, without considering any treble damages, the amount of attorneys' fees would be *$1,781,104.00* (*$*5,343,312.00 x 1/3).

54.    Consequently, the amount in controversy for Plaintiff's WVCCPA class claim is either ***$7,460,416.00*** ($5,595,312.00 + $1,865,104.00) (if the Court considers treble damages when it assesses attorneys' fees) or ***$7,376,416.00*** ($5,595,312.00 + $1,781,104.00) (if the Court omits treble damages from the attorneys' fees calculation).  Both sums exceed CAFA's $5 million jurisdictional requirement.

55.    Moreover, this analysis does not consider Plaintiff's other claims for negligence (Count I), common law bad faith (Count III), unfair trade practices (Count IV) and unjust enrichment (Count V).  *See* State Court Compl. ¶¶ 22-26, 37-60, at pp. 9-10, 12-17.  For these other claims, Plaintiff seeks a recovery of alleged "compensatory damages, treble damages, punitive damages, attorneys' fees and costs, pre-judgment interest, post-judgment interest as provided by law, suitable equitable relief, restitution, disgorgement by Defendant of all profits." *See id.* at p. 19.  The claims will significantly increase the amount in controversy in this action.  However, the preceding discussion establishes that this case satisfies the CAFA amount in controversy requirement and an extended discussion of these other claims is neither warranted nor necessary.  *See Scott*, 865 F.3d at 194 (holding that a notice of removal need only contain a "short and plain statement of the grounds for removal" and plausible allegations that the case meets the CAFA requirements).

## This Court Has Traditional Diversity Jurisdiction

56.    The Court also has traditional diversity jurisdiction over this case.  Pursuant to 28 U.S.C. § 1332(a), the "district courts shall have original jurisdiction of all civil actions" where the parties are completely diverse and the amount in controversy exceeds the sum or value of $75,000.

57.     A notice of removal seeking to remove a case to federal court pursuant to traditional diversity jurisdiction need only satisfy "the notice-pleading requirements of 28 U.S.C. § 1446(a) and, indirectly Federal Rule of Civil Procedure 8(a)." *Ellenburg*, 519 F.3d at 194.

58.     Here, Plaintiff's initial Federal Complaint ***explicitly admitted*** that "this Court has jurisdiction pursuant to 28 U.S.C. §1332(a)" and that the case satisfies all of the requirements for traditional diversity jurisdiction. *See* Fed. Compl. ¶ 6, at p. 3.

59.     Next, Plaintiff's State Court Complaint as well as public records from the West Virginia Secretary of State and the West Virginia Offices of the Insurance Commissioner further establish the existence of complete diversity. As set forth in Paragraphs 33 and 34 above, Plaintiff is a citizen of West Virginia and ABLAC is a citizen of Florida. *See also* State Court Compl. ¶¶ 3, 4; Exs. 5 & 6 (ABLAC is a Florida corporation with a principal place of business in Miami, Florida).

60.     Plaintiff's individual claim also satisfies the $75,000.00 amount in controversy requirement.

61.     As discussed in Paragraphs 39 and 40 above, Plaintiff's July 2, 2020 letter demanded that ABLAC "immediately" pay to Plaintiff the "face amount of the policy," which Plaintiff identified as $50,000.000, as well as "reimbursement" for allegedly excess "premium payments" that ABLAC supposedly collected. Ex. 7, July 2, 2020 Letter at p. 1-2.

62.     Plaintiff's State Court Complaint incorporates the July 2, 2020 letter by reference in Plaintiff's breach of contract claim and reiterates Plaintiff's demand for the $50,000.00 "face amount of the policy." State Court Compl. ¶ 33, at p. 11. The State Court Complaint also alleges that ABLAC purportedly collected excess "automatic premium withdrawals" from Plaintiff after Mr. Wood's "loan" was supposedly "paid." *See, e.g., id.* ¶ 15, at p. 4-5.

63.　　Plaintiff alleges that the monthly premium payments were $17.50 per month ($210 / year) during the relevant time period. *Id.* ¶ 8, p. 3. If Plaintiff's claim is timely (which ABLAC does not concede), Plaintiff asserts a potential claim for alleged premium overpayment in the amount of ***$2,100.00*** ($210 x 10) during the ten-year limitations period that applies to the breach of contract claim. W. Va. Code § 55-2-6.

64.　　As a result of these allegations, Plaintiff alleges she is seeking to recover at least $50,000.00 for the "face value" of the supposed ABLAC policy plus a recovery for $2,100 for purported "excess premium withdrawals." The total amount in controversy for these allegations alone is ***$52,100.00***.

65.　　As discussed in Paragraphs 43 through 54 above, Plaintiff also seeks a separate recovery for statutory penalties under the WVCCPA. Here, as noted above, if Plaintiff's claim is timely (which ABLAC does not concede), Plaintiff asserts a potential individual claim for $1,113.19.00 for each alleged "automatic premium withdrawal" for a four year limitations period and a total individual statutory penalty demand of ***$53,433.12*** (1,113.19.00 x 12 x 4).[5] W.Va. Code § 46A-5-101 (establishing a four year statute of limitations for WVCCPA claims).

66.　　Plaintiff's claims for the "face value" of the ABLAC policy allegedly at issue ($52,100.00) and for statutory damages under the WVCCPA ($53,433.12) result in a total amount in controversy of ***$105,533.12***. These two claims are sufficient to satisfy the $75,000.00 amount in controversy requirement.

---

[5] This assumes that the $53,433.12 statutory penalty is greater than the total alleged outstanding indebtedness." *See* W. Va. Code §46A-5-101(1). However, if the total alleged outstanding indebtedness is greater, this sum may increase significantly.

67.     Nonetheless, Plaintiff also seeks an individual award of treble damages and attorneys' fees under the WVCCA, which further increase the amount in controversy.  *See* State Court Compl. ¶¶ 70-71 & "Wherefore," at p. 19.

68.     If the Court awards Plaintiff treble damages on her individual WVCCPA claim for statutory damages, the treble damages in controversy will be ***$2,520.00*** ($840 (value of allegedly excess premium withdrawals for the 4 year WVCCPA limitations period) x 3) and the amount in controversy for the WVCCPA claim increases to ***$55,953.12*** ($53,433.12 + $2,520.00).  *See* W. Va. Code §§ 46A-3-109(8), 46A-5-101; *Atkins*, 2019 WL 5190971, at *8 n.8 (courts consider treble damages when evaluating the amount in controversy).

69.     If the Court awards Plaintiff attorneys' fees on her WVCCPA statutory damages claim[6] and considers the treble damages when issuing the award, the amount of attorneys' fees in controversy will be ***$18,651.04*** ($55,953.12 x 1/3).  The amount of attorneys' fees in controversy will be ***$17,811.04*** ($53,433.12 x 1/3) if the Court omits the treble damages from the award.

70.     Consequently, the treble damages and attorneys' fees increase the amount in controversy for Plaintiff's individual WVCCPA claim to either ***$74,604.16*** ($55,953.12 + $18,651.04) (if the Court considers treble damages when it assesses attorneys' fees) or ***$73,764.16*** ($55,953.12 + $17,811.04) (if the Court omits treble damages from the attorneys' fees calculation).

71.     When these sums are combined with the amount in controversy related to Plaintiff's claim for at least $50,000.00 for the "face value" of the supposed ABLAC policy plus a recovery for $2,100 for purported "excess premium withdrawals" (which is $52,100.00, as explained in Paragraph 64 above), the total amount in controversy for the two claims is either ***$126,704.16***

---

[6] *See Holstein*, 2014 WL 4467696, at *2 (adding a "one-third attorney's fee" to the amount in controversy for removal purposes); *Countryman*, 2009 WL 1506720, at *2 (considering attorneys' fees when assessing the amount in controversy for removal under 28 U.S.C. § 1332(a)).

($52,100.00 + $74,604.16) or ***$125,864.16*** ($52,100.00 + $73,764.16).  Both of these sums greatly exceed the $75,000 jurisdictional minimum for removal.

72.    Additionally, as discussed in Paragraph 55 above, this analysis does not even take into consideration four of Plaintiff's other claims and her additional requests for relief, which will also significantly increase the amount in controversy.

## Venue is Proper in this Court and ABLAC Has Complied With All Other Procedural Requirements for Removal

73.    This case has been removed from the Circuit Court of Raleigh County, West Virginia.  *See* State Court Compl. at p. 1.

74.    The Circuit Court of Raleigh County, West Virginia is located in the territory covered by the United States District Court for the Southern District of West Virginia, Beckley Division.

75.    Thus, pursuant to 28 U.S.C. § 1441(a), venue for this case is proper in the United States District Court for the Southern District of West Virginia, Beckley Division.  *See also* 28 U.S.C. § 129(b).

76.    This case is not an action described in 28 U.S.C. § 1445.

77.    Pursuant to 28 U.S.C. § 1446(d), ABLAC is serving a true and accurate copy of this Notice of Removal and all exhibits on counsel for the Plaintiff and ABLAC is also filing these documents with the Clerk of the Circuit Court of Raleigh County, West Virginia.  ABLAC's state court Notice of Filing is attached as Exhibit 4.

78.    Pursuant to 28 U.S.C. § 1446(a) and Local Rule of Procedure 3.4(b), ABLAC is attaching a copy of the state court docket to this Notice as Exhibit 3.  ABLAC has also attached copies of all pleadings, process and orders served on ABLAC as Exhibit 2.

**Reservation of Rights**

79.     ABLAC denies the allegations contained in Plaintiff's State Court Complaint and her Federal Complaint.  ABLAC submits this Notice of Removal without waiving any defenses, claims, objections, procedural rights, exceptions or obligations that may exist in its favor in either West Virginia state court or federal court.

80.     Furthermore, in making any of the allegations in this Notice of Removal or any of its exhibits, ABLAC does not concede in any way that the allegations in the State Court Complaint or the Federal Complaint are accurate, that Plaintiff has asserted claims upon which relief can be granted, that Plaintiff's claims are timely, or that recovery of any of the amounts sought is authorized or appropriate.  ABLAC also does not concede that class certification is appropriate or that the class definition is proper.  ABLAC reserves the right to contest the putative class at the appropriate time.

WHEREFORE, ABLAC respectfully removes this action from the Circuit Court of Raleigh County, West Virginia to this Court.

Dated:  May 5, 2021

Respectfully submitted,

 /s/ Jill Cranston Rice
Jill Cranston Rice (WVSB # 7421)
Alex M. Greenberg (WVSB # 12061)
DINSMORE & SHOHL LLP
215 Don Knotts Blvd., Suite 310
Morgantown, WV 26501
Phone: (304) 296-1100
Fax:  (304) 296-6116
Email:  jill.rice@dinsmore.com
Email:  alex.greenberg@dinsmore.com

*Attorneys for American Bankers Life Assurance Company of Florida*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

Sandra Wood, individually and as
Administratrix of the Estate of Michael
Wood, deceased, and on behalf of all others
similarly situated,

                  Plaintiff,

v.

American Bankers Life Assurance Company
of F.L.O.R.I.D.A.,

                  Defendant.

5:21-cv-00281
C.A. No. _____
(Removed from Circuit Court of Raleigh
County, C.A. No. CC-41-2021-C-93)

## CERTIFICATE OF SERVICE

       The undersigned attorney hereby certifies that she served the foregoing **Notice of Removal**

and all exhibits on counsel of record listed below by depositing true copies thereof in the regular

manner in the United States mail, postage prepaid, on the 5th day of May, 2021, addressed as

below.   Additionally, the Notice of Removal was filed electronically on the same date via

CM/ECF.

Tony L. O'Dell
Cheryl A. Fisher
Post Office Box 11830
Charleston, WV 25339
Phone:  (304) 720-6700
Email:  todell@tolawfirm.com
Email:  cfisher@tolawfirm.com

*Counsel for Plaintiff*

                             Respectfully submitted,

                              /s/ Jill Cranston Rice
                             Jill Cranston Rice (WVSB # 7421)